**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHANTEL DUDLEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **V.** | § | **Civil Action No. 4:19-cv-317-O** |
| | § | |
| **UNITED STATES** | § | |
| **OF AMERICA, Et Al.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION and ORDER RESOLVING MOTIONS TO DISMISS

This case was filed by counsel on behalf of Bureau of Prisons ("BOP") inmate/Plaintiff Chantel Dudley asserting claims against former FMC-Carswell Officer Matthew McGaugh, former FMC-Carswell Warden Jody R. Upton, and the United States of America ("USA"). Complaint 1-2, ECF No. 1. Now pending are separate dispositive motions filed by each defendant. USA Mot. Dismiss, ECF No. 15; Upton Mot. Dismiss, ECF No. 16; and McGaugh Request to Dismiss, ECF No. 25. Also before the Court are Plaintiff's responsive briefs to each motion, and a reply filed by the USA and by Upton. Dudley USA Resp., ECF No. 21; Dudley Upton Resp., ECF No. 24; Dudley McHaugh Resp., ECF No. 29; USA Reply, ECF No. 26; Upton Reply, ECF No. 27. After considering the relief sought by Dudley, the record, the briefing and the applicable law, the Court finds that McHaugh's motion to dismiss must be **DENIED**, and the motions to dismiss filed by USA and Upton must be **GRANTED**.

## I.      BACKGROUND

Dudley, a former inmate at FMC-Carswell, was sentenced by the United States District Court for the Eastern District of Tennessee to a 37 month term-of-imprisonment for conspiracy to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). *United States v. Dudley*, Judgment, No. 2:16-cr-7-RLJ-MCLC (E.D. Tenn. Aug. 23, 2016), ECF No. 246. In 2016,

Dudley was incarcerated in FMC-Carswell. Complaint ¶ 11.

### A. McGaugh sexually assaulted Dudley at FMC-Carswell on November 1, 2016.

McGaugh was Dudley's case manager in the mental health unit at FMC-Carswell in 2016. Complaint ¶ 16.[1] On November 1, 2016, Dudley had multiple meetings with McGaugh in his office. During these meetings, McGaugh coerced Dudley into performing certain sexual acts, as detailed in the Complaint. *Id.* ¶¶ 19-37. After these multiple coerced sexual encounters occurred on November 1, McGaugh forced Dudley to meet him late that same night in a room on the hospital floor of FMC-Carswell. *Id.* ¶ 39. McGaugh proceeded to sexually assault Dudley again. *Id.* ¶¶ 40-45.

The next day, Dudley told her psychologist at FMC-Carswell that she wanted to be transferred to another prison because she had been assaulted by a case manager. Complaint ¶¶ 46-50. Dudley alleges that while she did not want to divulge the name of her attacker, Lieutenant Sosa, an FMC-Carswell employee, asked if she was referring to McGaugh. *Id.* ¶¶51-55. Dudley alleges that Sosa was able to identify McGaugh as her attacker because FMC-Carswell had experienced previous problems with McGaugh. *Id.* ¶¶ 55-56.

### B. The United States investigated and prosecuted McGaugh for sexual assault.

After Dudley identified McGaugh as her attacker, the BOP investigated her allegations and identified McGaugh's DNA on Dudley's person. Complaint ¶ 62. When McGaugh was confronted, he admitted his guilt and, eventually, pled guilty to sexual abuse with a ward in violation of 18 U.S.C. § 2243(b). *See United States v. McGaugh*, 4:17-cr-105-O (N.D. Tex. Nov. 14, 2017 ).  In that criminal case, this Court sentenced McGaugh to 12 months in prison. J. *United States v. McGaugh*, No. 4:17-cr-105-O, ECF No. 33.

### C. The United States transferred Dudley to a new BOP facility.

---

[1]Unless otherwise indicated, these facts are taken from those alleged in the complaint.

Dudley alleges that after she identified McGaugh as her abuser, she was harassed by FMC-Carswell staff and other prisoners. Complaint ¶¶ 70-71. In particular, Dudley claims that correctional officers and inmates (though not Upton): destroyed her property, spilled ink pens on her, poured out her laundry soap, took her food, and verbally abused her (by calling her, *inter alia*, a snitch, a liar, and a whore). *Id.* ¶¶ 71-77. Dudley asserts that she reported this harassment to Upton, and asked to be transferred to another prison. *Id.* ¶¶ 78-79. Dudley further claims that Upton refused to take action, though Dudley also acknowledges that she was transferred out of FMC-Carswell within four months of her assault (i.e., in or around February 2017). *Id.* ¶¶ 80-82.

### D. Dudley's Claims

Dudley lists five causes of action in her complaint. Complaint 14-24, ECF No.1 First she alleges claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against Defendant McGaugh for excessive force in violation of the Fourth Amendment, and for cruel and unusual punishment under the Eighth Amendment. *Id.* at 14-16. Next she alleges a *Bivens* claim against Upton for deliberate indifference to her health and safety under the Eighth Amendment. *Id.* at 18-19. She further alleges claims against the USA under the Federal Tort Claims Act ("FTCA") for battery based upon the actions of McGaugh, and for negligence in the hiring, training, retention, and supervision of McGaugh. *Id.* at 20-24.

## II. DEFENDANT McGAUGH'S REQUEST/ MOTION TO DISMISS

### A. Construction of McGaugh's Motion under Rule 12(b)(2)

Individual Defendant Matthew McGaugh, proceeding pro se, filed a document he entitled "Request/Motion to Dismiss" in which he wrote the following:

> I, the Defendant, Matthew Corby McGaugh, request this Dismissal due to Lack of Jurisdiction. The Defendant has residence outside the jurisdiction of the Northern District of Texas, at 6523 Dalton Road, Hensley, Arkansas 72065. Secondly, I am

currently on Probation under the Federal United States Probation Office in the Eastern District of Arkansas.

McGaugh Request Dismiss 1, ECF No. 25. McGaugh did not further provide any authority or basis for this motion. Plaintiff Dudley interprets McGaugh's motion as a challenge to personal jurisdiction, and thus responded to the motion as if McGaugh raised lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Resp. Brief 4-9, ECF No. 29. McGaugh did not file a reply.

### B. Application and Analysis under Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction permits a nonresident defendant to challenge the court's jurisdiction over the defendant's person or property. Fed. R. Civ. P. 12(b)(2). The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

Exercising personal jurisdiction over a nonresident defendant is consistent with constitutional due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380–81 (5th Cir. 2003). (quoting *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *International Shoe Co.* at 316)). Minimum contacts can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction. *Id*. at 381.

This Court has personal jurisdiction over McGaugh. The fact that McGaugh now lives in Arkansas does not divest this Court of jurisdiction. McGaugh purposefully availed himself of the benefits and protections of the state of Texas when he lived in Texas and worked in Texas. McGaugh was a case manager in the mental health unit at FMC-Carswell and was Dudley's case manager.

Complaint 4 ¶16, ECF No. 1. FMC-Carswell is located in Fort Worth, Texas and is within this the Northern District of Texas. *Id.* at 1. In his capacity as Dudley's case manager at FMC-Carswell, McGaugh took the actions against her in Fort Worth, Texas. And, McGuagh was then convicted of sexual abuse of a ward in violation of 18 U.S.C. § 2243(b) in the Northern District of Texas, Fort Worth division. *Id.* at 10. Thus, the exercise of jurisdiction over McGaugh does not offend traditional notions of fair play and substantial justice. *Cent. Freight Lines Inc.* at 380-81. Furthermore, the fact that McGaugh is on federal probation in Arkansas does not relieve him of potential civil liability for the conduct engaged in while in Fort Worth, Texas.

For all of these reasons, the Court finds that it has personal jurisdiction over McGaugh such that his motion to dismiss, construed as filed under Rule 12(b)(2), must be denied. The Court notes that under Rule 12(a)(4), the filing of a motion under [Rule12] alters the time for a defendant to serve a responsive pleading such that "if the court denies the motion . . . the responsive pleading must be served within 14 days after notice of the Court's action." Fed. R. Civ. P. 12(a)(4)(A). As the Court has denied McGaugh's Rule 12(b) motion, he will now be directed to file a responsive pleading within 14 days after his receipt of this order.

## III. DEFENDANT UPTON'S MOTION TO DISMISS

Former Warden Jody Upton moves to dismiss Plaintiff Dudley's claims for relief on the basis that: (1) Dudley cannot establish that a *Bivens* remedy is available for her claim under the Eighth Amendment; and, (2) even if such a claim is available, Dudley fails to state a claim of a violation of a constitutional right that was clearly established at the time, such that he is entitled to qualified immunity. Dudley listed her claims against Upton in both his individual and official capacities. Complaint 1,3; ECF No. 1. To the extent Dudley asserts claims under any federal statute or the Constitution against Upton in his official capacity, those claims are actually claims against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that suits against officers

in their official capacities are suits against the entity of which the officer is an employee or agent). Any such claims are considered and rejected in the Court's consideration of the USA's motion to dismiss, *infra*. Furthermore, to the extent Dudley asserts claims under *Bivens* against Upton in an official capacity, those claims must be dismissed because "the FTCA does not waive federal sovereign immunity for constitutional torts." *Patty v. United States*, H-013-3173, 29015 WL 1893584, at *6 (S.D. Tex. Apr. 27, 2015) (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims.").

### A.     Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule of Civil Procedure 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet the requirements of *Iqbal* and *Twombly* no viable claim is stated and the pleadings are subject to dismissal.

### B.    Analysis – Whether *Bivens* Extends to Dudley's Constitutional Claim Against Upton

#### 1.   <u>Introduction</u>

In *Bivens*, the United States Supreme Court for the first time "recognized 'an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights,'" specifically, under the Fourth Amendment. *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017) (quoting *Malesko*, 534 U.S. at 66). In subsequent decisions the Supreme Court decided only two other cases in which it recognized an implied cause of action outside of the Fourth Amendment context: *Davis v. Passman*, 442 U.S. 228 (1979) (holding the "Fifth Amendment  Due Process Clause gave [the

petitioner] a damages remedy for gender discrimination") and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that the "Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner's estate] a damages remedy for failure to provide adequate medical treatment"). *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854-55 (2017). In *Abbasi*, the Supreme Court noted that those "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855. And the Court explained it had "notabl[y] change[d] . . . [its] approach to recognizing implied causes of action . . . ma[king] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1857 (citing *Iqbal*, 556 U.S. at 675).

In order to determine whether a *Bivens* remedy is available to Dudley on her constitutional claim against Upton, this Court "must first assess whether [her] claim[s] present a new *Bivens* context." *Butts*, 877 F.3d at 587 (citing *Ashcroft v. Iqbal*, 556 at 675). "If so, there are two circumstances where *Bivens* does not recognize an implied cause of action for constitutional violations. First, *Bivens* claims are unavailable 'if there are special factors counseling hesitation in the absence of affirmative action by Congress.'" *Butts*, 877 F.3d at 587 (quoting *Abbasi*, 137 S.Ct. at 1857) (internal citation omitted). "Second, *Bivens* remedies may be foreclosed by congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Butts*, 877 F.3d at 587 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

2.     Whether Dudley's Claim Against Upton Presents a New *Bivens* Context

In *Abassi*, after discussing the only three cases where the Supreme Court had previously approved of an implied damages remedy—*Bivens*, *Davis*, and *Carlson*—the Court explained "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new" and courts should be cautious of recognizing any implied *Bivens* remedy. *Abassi*, 137 S.Ct. at 1859. Dudley's claim against Upton is an assertion that he was deliberately indifferent

to her health and safety under the Eighth Amendment for failing to protect her from verbal and psychological abuse, threats, and harassment she sustained from both officers and her fellow inmates *after* McGaugh's sexual abuse of her was disclosed. Complaint 11 ¶ 70, 18-19 ¶¶ 120-130, ECF No. 1.[2] Dudley's Eighth Amendment claim against Upton is distinguishable from the three prior Supreme Court cases where a *Bivens* remedy has been recognized , and appears to present a new *Bivens* context.

The Court reaches this determination for several reasons. First, in *Abbasi* itself, the underlying claim was against a warden for failing to stop prison staff from abusing a pretrial detainee, a claim similar to that before the Court. The Supreme Court explained that a *Bivens* claim could not simply be assumed to exist in the new context. *Abassi*, 137 S.Ct. at 1864-65. Furthermore, the only case of the three where the Supreme Court recognized a *Bivens* remedy that had anything to do with the rights of an inmate was *Carlson v. Green*, involving an alleged failure to provide medical treatment for an inmate with a "serious[]" and "Chronic Asthmatic Condition" known to prison officials. *Carlson*, 446 U.S. at 16 n.1. Dudley argues in her response that *Carlson* stands for the proposition that all potential Eighth Amendment violations are actionable as direct implied damages claims under the Constitution. Upton Resp. 9-13, ECF No. 24. But Dudley's interpretation of *Carlson* is foreclosed by *Abassi*, as the Court there confined *Carlson* to its facts. Relying in part on its holding in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), the *Abassi* Court held that Carlson had only recognized an

---

[2]Although Upton refers to a "possible" claim against Upton for failing to protect her from the underlying sexual assault, the Court does not so interpret Dudley's complaint. In this regard, the section of the complaint listing the actions of Upton begins with the phrase "After Ms. Dudley disclosed the sexual abuse by her Case Manager, she was harassed by staff and other inmates." Complaint 11 ¶ 70, ECF No. 1. And in the listing of the Eighth Amendment cause of action section against Upton, the allegations are all related to Upton's failure to protect her from the abuse and harassment she received after "nurses in Plaintiff's housing unit made the situation known to other inmates and to officers in FMC Carswell." Complaint 18 ¶ 123, ECF No. 1. Thus, the Eighth Amendment claim Dudley pleads against Upton is defined by the complaint to relate only to allegations of Upton's failure to protect her from alleged harm suffered after the McGaugh sexual abuse was revealed.

implied damages remedy under the Eighth Amendment for "failure to provide medical treatment." *Abassi*, 137 S.Ct. at 1859, 1865. And the Court noted that the standard applicable "for a claim that a warden allowed guards to abuse pre-trial detainees is less clear [than the deliberate indifference to serious medical needs standard] under the Court's precedents." Id. at 1865. Indeed, *Abbasi* recognized that while the "differences between this claim and the one in *Carlson* are perhaps small," given the Court's "expressed caution about extending the *Bivens* remedy . . . the new-context inquiry is easily satisfied." *Id*. at 1865.

Moreover, other recent cases in which inmates have asserted Eight Amendment claims against an individual federal official under a failure to protect from harm theory of recovery have been found to raise a new context. In this regard, the Court finds instructive the recent analysis of the similar claim of whether a *Bivens* claim for a BOP official's failure to protect an inmate from injury after being called a snitch is a new context:

> Plaintiff asserts that, since Defendant Preston offered to pay inmates to harm Plaintiff and labeled Plaintiff a snitch in front of other inmates, Defendant Preston was deliberately indifferent to a substantial risk of serious harm to Plaintiff's health and safety in violation of Plaintiff's Eighth Amendment rights. Initially, Plaintiff's apparent argument that the Supreme Court implied a *Bivens* damages remedy for an Eighth Amendment failure to protect claim in *Farmer* is unavailing because the Supreme Court in *Ziglar* clearly stated that "*Bivens*, *Davis*, and *Carlson* ... represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855 (italics added). Therefore, the Supreme Court has approved of only one *Bivens* damages remedy under the Eighth Amendment – specifically for failure to provide medical care. *Carlson*, 446 U.S. at 16 n.1, 18-23. In this case, Plaintiff's Eighth Amendment claim differs meaningfully from the Eighth Amendment claim in *Carlson* because Plaintiff's claim arises out of allegations that a correctional officer offered to pay inmates to harm Plaintiff and labeled Plaintiff a snitch in front of other inmates, not failure to provide medical care. Therefore, Plaintiff's Eighth Amendment failure to protect claim accordingly arises in a new *Bivens* context.

*Hoffman v. Preston*, No.1:16-cv-01617-LJO-SAB (PC), 2019 WL 5188927, at *5 (E.D. Cal. Oct. 15, 2019), *R and R adopted*, 2020 WL 58029 (E.D. Cal. Jan. 6, 2020). And, that same district court

recently rejected the claim that a federal official should be liable for failing to protect an inmate from assault by another inmate:

> Here, Plaintiff brings a case under the Eighth Amendment for Defendants' failure to protect him from injury by his cellmate. The context of Plaintiff's failure-to-protect claims are unlike those in the three cases where the Supreme Court implied a damages remedy under the Constitution. *Abassi*, 137 S.Ct. at 1854-55 (citing *Bivens*, 403 U.S. at 388; *Carlson*, 446 U.S. 14; and *Davis*, 442 U.S. 228). Plaintiff's argument that the Supreme Court implied a damages remedy for failure to protect an inmate in *Farmer* is unavailing because *Abassi* determined that "three cases -- Bivens, Davis, and Carlson -- represent the *only* instance in which the Court has approved of an implied damages remedy under the Constitution itself." (emphasis added.) *Abassi*, 137 S. Ct. at 1855. The Supreme Court permitted only one "Bivens claim for prisoner mistreatment -- specifically for failure to provide medical care." *Id.* at 1864.Taking into account the Supreme Court's admonition that extending *Bivens* is now a "disfavored" judicial activity, the court concludes that Plaintiff's case is different in a meaningful way from previous *Bivens* cases decided by the [Supreme] Court." *Id.* at 1857. Although Plaintiff's Eighth Amendment claim is similar to *Carlson* in that it also involves an Eighth Amendment claim for deliberate indifference, Plaintiff's claim does not involve medical care; it accordingly arises in a new context and necessitates consideration of whether there are "special factors" that would imply a new *Bivens* remedy in a new context.

*Carraway v. Ciufo*, No.1:17-cv-0533-DAD-GSA-PC, 2019 WL 3546429, at *4 (E.D. Cal. Aug, 5, 2019). Applying the analysis of these cases reviewing whether very similar Eight Amendment claims present a new *Bivens* context, the Court finds that Dudley's claims against Upton under the Eighth amendment for failing to protect her from abuse, threats, and harassment from both officers and inmates, presents a new *Bivens* context. Thus, the Court must turn to the analysis of whether any "special factors"counsel hesitation in recognizing a new judicial remedy, and whether alternative processes protect Dudley's interests.

### 3. Overview of Special Factors to Consider

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress" to create one. *Abbasi*, 137 S. Ct. at 1857. As clarified by *Abbasi*,

this "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858 (emphasis added). Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that existing process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

4.    Special Factors counsel against *Bivens* expansion.

One of the most significant special factors, emphasized repeatedly in *Abbasi*, are separation-of-powers principles. *See Abbasi*, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis"). *Abbasi* recognized that Congress's failure to provide a damages remedy is both "relevant" and "telling" when it has regulated extensively in a specific arena and made specific policy choices as to how complaints should be resolved. *Id.* at 1862. Here, Congress has legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA"), which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* *Abbasi* makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to. *Id.*

Similarly, Congress specifically addressed the issue of sexual assaults in prison when it passed the Prison Rape Elimination Act in 2003. *See* 34 U.S.C. §§ 34301 *et seq.* Although the Prison Rape

Elimination Act ("PREA") "was drafted to address the problem of rape in prison, authorize grant money, and create a commission to study the issue; it does not give prisoners any specific rights." *Johnson v. Rupert*, No.6:11-cv-446, 2014 WL 6969202, at *5 (E.D. Tex. Dec. 9, 2014) (citing *Chinnici v. Edwards*, No.1:07-cv-229, 2008 WL 3851294 at *3 (D. Vt. Aug. 13, 2008)). The Fifth Circuit has also rejected a claim that the PREA creates a private right of action. *Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015) ("Insofar as Krieg argues that his rights under the [PREA] were violated , other courts addressing this issue have found that the PREA does not extablsih a private cause of action for allegations of prison rape") (citations omitted). Thus, again Congress had the opportunity to create a privately-enforceable damages remedy against federal officials for claims relating to prison rape, but declined to do so. This Congressional inaction further counsels against judicial creation of such a remedy that the legislature has not seen fit to create.

Additional special factors that weigh against extending *Bivens* to the type of Eighth Amendment claim asserted by Dudley are the system-wide costs associated with the creation of a damages remedy absent congressional action. As *Abbasi* instructs, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. This includes "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.* In the prison context, these burdens and costs are particularly high due, in part, to the sheer volume of potential litigation arising from the creation of a *Bivens* remedy—there are more than 174,000 federal inmates and over 36,000 BOP employees. *See* Federal Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency/ (last visited Jan. 31, 2020).

Yet another special factor counseling hesitation here is the difficulty in creating a workable cause of action. *See Abbasi*, 137 S. Ct. at 1864–65 (discussing the lack of clarity as to the legal standard for a purported *Bivens* claim alleging a warden allowed staff to abuse a pretrial detainee);

*Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017) (recognizing the "inherent uncertainty surrounding" the applicable legal standard as "a factor counseling hesitation" in expanding *Bivens*). Congress and the Supreme Court have repeatedly deferred to the Attorney General and prison administrators' expertise because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Here, Dudley's claim relates to Upton's management of prison staff and questions of whether and when to transfer a prisoner to another BOP facility. These are matters of prison administration not subject to any clear legal standard so as to make a *Bivens* claim viable. Moreover, by not legislating a *Bivens*-type remedy in this area despite ample opportunity to do so, it is evident that Congress does not intend for such a remedy to be created.

### 5.    Alternative remedial processes available to Dudley.

One key consideration against implying a *Bivens* remedy in a new context is the availability of alternative processes to address the allegedly improper actions of Upton. For example, prisoners like Dudley can seek "an injunction requiring the warden to bring his prison into compliance" or can seek "some other form of equitable relief." *Abbasi*, 137 S. Ct. at 1865. And this "existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* Here, in fact, Dudley has already pursued other alternative remedies, including her claims in this suit brought against McGaugh and against the United States under the FTCA.[3]

The Federal Bureau of Prisons' Administrative Remedy Program is another alternative process available to prisoners like Dudley. Under this program, prisoners can file grievances about any aspect

---

[3]The fact that the Court determines later in this opinion that jurisdiction is lacking for Dudley's FTCA claim for different reasons, does not change this analysis, as the focus is on the *availability* of an alternative remedy and not ultimate success. *See generally Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (rejecting expansion of *Bivens* into a new context after noting that the prisoner was able to pursue administrative remedies, "albeit unsuccessfully").

of their confinement, the agency must provide written responses in specified time frames, and prisoners may appeal institution-level responses to the agency's regional and central offices. *See* 28 C.F.R. §§ 542.10–19 (2017). Numerous courts post-*Abbasi* have recognized that the Administrative Remedy Program is an alternative process and a special factor that forecloses expansion of the *Bivens* remedy. *See, e.g.*, *Begay v. Leap*, No. 3:17-cv- 2639-N-BT, 2019 WL 1318410, at *3 (N.D. Tex. Feb. 6, 2019), *R and R adopted*, 2019 WL 1315901 (N.D. Tex. Mar. 22, 2019) ("[S]everal courts have explicitly recognized the administrative remedy program ('ARP') available in the prison setting as an alternative process foreclosing a personal-capacity damages remedy") (quoting *Brunson v. Nichols*, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018), *R and R adopted*, 2019 WL 545479 (W.D. La. Feb. 11, 2019)); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Muhammad v. Gehrke*, No. 2:15-cv-334, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018).

6.    Summary

Because Dudley's complaint against Jody Upton seeks monetary damages relief for violation of her Eighth Amendment rights under *Bivens*, and review of the law and underlying record confirms that no *Bivens* remedy is available for her particular Eighth Amendment claim, Defendant Upton's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted and Dudley's claims against Upton  must be dismissed.[4]

## IV.    MOTION TO DISMISS OF USA UNDER RULE 12(b)(1)

### A.    Overview

---

[4]In Upton's motion to dismiss under Rule 12(b)(6), he also argues that he is entitled to qualified immunity. Mot. Dismiss 20–30, ECF No. 16. Because the Court has determined that plaintiff Dudley lacks a cause of action under *Bivens*, the Court need not address the qualified immunity issue. *See generally Maria S. As Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) ("The district court granted summary judgment on the issue of qualified immunity, but the defendants prevail on an alternative basis: the plaintiffs lack an implied cause of action under *Bivens*"). Furthermore, and alternatively, Defendant Upton is entitled to qualified immunity for the reasons stated in Upton's motion to dismiss, at section IV(B) (2)(a)-(b).

The USA filed a motion to dismiss all claims under Federal Rule of Civil Procedure 12(b)(1), contending that each of Dudley's claims against the USA under the FTCA are barred by sovereign immunity for different reasons. The parties agree that Dudley's claims against the USA include claims of battery based on upon the conduct of McGaugh, and claims of negligence on several different theories, including negligent hiring, negligent training, negligent retention, and negligent supervision. Complaint 20, 22-24, ECF No.1; USA Mot. Dismiss 9, ECF No. 15. In response to the arguments presented in the motion to dismiss, Dudley has conceded that this Court does not have jurisdiction under the FTCA for her claims of battery, negligent hiring, and negligent training. Dudley Resp. 11, ECF 22. Thus, those claims will be dismissed for the reasons stated in the USA's motion, and the balance of this section will focus on whether Dudley may proceed with her claims of negligent retention and negligent supervision.

### B.      Rule 12(B)(1) Standard of Review

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when a federal district court does not have the right to exercise its limited jurisdiction over the subject matter presented in the complaint. "Federal courts must resolve questions of jurisdiction before proceeding to the merits." *Ashford v. United States*, 463 F. App'x  387, 391-92 (5th Cir. 2012) (citing *Steel Co. V. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), *USPPS, Ltd. V. Avery Dennnison Corp.*, 647 F.3d 274, 283 & n.6 (5th Cir. 2011), and *Jasper v. FEMA*, 414 F. App'x 649, 651 (5th Cir. 2011)). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the first principle of federal jurisdiction." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998) (quotation and citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)(citations omitted).

The Court may consider matters outside the pleadings and attachments thereto in resolving a motion for lack of subject-matter jurisdiction under Rule 12(b)(1). *See Vinzant v. United States*, No. 2:06-cv-10561, 2010 WL 1857277, at *3 (E.D. La. May 7, 2010) (FTCA case) (citing *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009)); *see also See Allen v. Schafer,* No. 4:08-cv-120-SA-DAS, 2009 WL 2245220, at *2 (N.D. Miss. July 27, 2009) ("It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts")(citing *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986)). Specifically, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)(citations omitted). In this case, Dudley provided a copy of the Standard Form 95 Claim for Damages Injury or Death completed on her behalf on September 19, 2018. Attachment to Complaint, ECF No. 1-1. The Court has considered that document along with the complaint.

### C. Lack of Proper Exhaustion of Claims of Negligent Retention/Supervision

The FTCA provides that the jurisdiction authorized under 28 U.S.C. § 1346(b) for civil actions for loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his employment, is an exclusive remedy against the United States. 28 U.S.C.A. § 1346(b)(West 2019); 28 U.S.C.A. § 2679(b)(1) (West 2006). The United States is immune from suit unless it consents to be sued, and the terms of such consent, or waiver of its sovereign immunity, "define [the] Court's jurisdiction to entertain the suit." *United States v. Testan,* 424 U.S. 392, 399 (1976). The Supreme Court has recognized that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian,* 453 U.S. 156, 161 (1981)(citations

omitted). The requirement of exhaustion of administrative review "is a jurisdictional requisite to the filing of an action under the FTCA" and cannot be waived. *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981)(citations omitted).

This Court's subject-matter jurisdiction over an action against the United States under the FTCA is thus expressly conditioned upon compliance with the language of 28 U.S.C. § 2675(a), which requires that a claimant "shall have first presented the claim to the appropriate federal agency," and either obtain a written denial of the claim or wait six months after its filing at the appropriate agency to deem the agency decision as a final denial. *See* 28 U.S.C.A. § 2675(a)(West 2006). Since presentment of the administrative claim is jurisdictional, it must be pleaded and proven by the FTCA claimant. *Barber v. United States*, 642 F. App'x 411, 413 (5th Cir. 2016). "Even though the requirements of § 2675 are minimal, an FTCA claimant must nonetheless provide facts sufficient to allow his claim to be investigated and must do so in a timely manner." *Cook v. United States on behalf of U.S. Dep't of Labor*, 978 F.2d 164, 166 (5th Cir. 1992).

The Supreme Court recognized that strict compliance with the administrative exhaustion procedures outlined in the FTCA is required of a plaintiff who institutes an action against the United States. *See McNeil v. United States*, 508 U.S. 106, 112 (1993) (holding that failure to completely exhaust administrative remedies *prior* to filing an FTCA claim is a jurisdictional defect that cannot be cured by administrative exhaustion *after* suit is filed). The purpose of the FTCA's administrative-presentment requirement is to allow the federal agency promptly to investigate and, if appropriate, settle claims without having to resort to federal courts. *Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014). "Further, because presentment is a condition upon which the government consent to be sued under the FTCA's waiver of sovereign immunity, it must be strictly construed in favor of the United States." *Barber*, 642 F. App'x 413-14 (citation omitted).

As analyzed below, Fifth Circuit cases require FTCA litigants to apprise the government of sufficient facts to put it on notice of actual or potential claims. Because Dudley's administrative tort claim (ECF No.1-1) did not include facts that even allude to her negligence claims, she failed to administratively exhaust such claims, and thus failed to establish jurisdiction for such claims.

In *Rise v. United States*, the Fifth Circuit held that an FTCA action can only be "based on particular facts and theories of liability" that "can be considered part of the plaintiff's administrative claim." 630 F.2d 1068, 1071 (5th Cir. 1980). The *Rise* court held that a litigant needs to bring "to the Government's attention facts sufficient to enable it [to] thoroughly investigate its potential liability and to conduct settlement negotiations with the claimant." *Id.* Though "minimal, an FTCA claimant must nonetheless provide facts sufficient to allow his claim to be investigated and must do so in a timely manner." *Cook v. United States*, 978 F.2d, 164, 166 (5th Cir. 1992) (dismissing FTCA claim for lack of jurisdiction because the plaintiff's administrative tort claim was not "sufficiently specific").

In *Portillo v. United States*, 29 F.3d 624, 1994 WL 395174, (5th Cir. 1994) the Fifth Circuit considered whether an administrative tort claim relating to the government's allegedly negligent monitoring of a plaintiff's ankle surgery should have put the government on notice to any and all potential problems with the surgery. There, the plaintiff argued that the district court erred by dismissing his claim for negligent administration of spinal anesthesia. 1994 WL 395174 at *1. Relying on *Cook*, the Fifth Circuit affirmed dismissal of the anesthesia claim because the plaintiff's administrative claim did not even allude to the administration of anesthesia. *Id.* at *4. Following the Fifth Circuit's lead, several courts in this circuit have dismissed negligence claims related to substantive tort claims due to a plaintiff's failure to provide the government with sufficient facts to put the government on notice of the alleged negligence. *See, e.g.*, *Champion v. United States*, No. CV-08-1514-A, 2009 WL 3677829, at *5 (W.D. La. Sept. 11, 2009) (dismissing retaliation claim related to the assault of an inmate because he "did not present facts from which a retaliation claim could be

inferred") *R and R adopted*, 2009 WL 3677594 (W.D. La. Nov. 4, 2009); *see generally Wright ex rel. Wright v. United States*, 914 F. Supp. 2d 837, 844-45 (S.D. Miss. 2012) (dismissing sexual harassment claim because the administrative claim for wrongful death did not contain any facts relevant to such claim); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4449970 **5-6 (E.D. La. Sept. 29, 2008) (dismissing claims because while the administrative claim alleged negligence in the handling of the canals by government officials, it did not reference the government's allegedly negligent management of its contractors); *Nunez v. United States*, No. 1:13-cv-419, 2017 WL 1147787, at *3 (E.D. Tex. Mar. 10, 2017) (dismissing inmate's assault claim for failure to provide specific facts), *R and R adopted*, 2017 WL 1148612 (E.D. Tex. Mar. 27, 2017); *Smith v. United States*, 157 F. Supp. 3d 32, 37-39 (D.D.C. 2016) (applying *Rise* and dismissing a negligence claim for failure to exhaust).

Notably, two courts in this circuit have recently dismissed negligence claims in situations remarkably similar to the instant case. In *Peteet v. Hawkins*, No. CV H-17-1312, 2018 WL 4039375, at *4, *6 (S.D. Tex. July 17, 2018), *R and R adopted*, 2018 WL 4033775 (S.D. Tex. Aug. 23, 2018), a BOP inmate asserted claims against the United States for negligently hiring, training, supervising, evaluating, and retaining the prison official responsible for her rape. There, the court held that the inmate failed to exhaust her negligence claims because her administrative claim "only alleged that Hawkins assaulted her and did not contain any allegation that Bureau of Prisons staff negligently supervised Hawkins" nor did it contain "any facts to suggest that it should have been foreseeable to the Bureau of Prisons management that Hawkins would assault her . . . ." *Id.* at *6-7. Similarly, in *Ramirez v. United States*, No. 4:17-cv-1142, 2018 WL 6977340, *3 (S.D. Tex. Dec. 12, 2018), the court dismissed an inmate's negligence claims related to her assault by a prison guard because she did "not assert that the actions of [the prison guard Thomas] were due to the negligence of any other [prison] official or employee," and the administrative claim did not contain any facts outside of the

assaults committed by the prison guard defendant. *Id.*

Here, Dudley's September 19, 2018 administrative claim describes the November 1, 2016 sexual assault by McGaugh, the United States' subsequent investigation of the assault and prosecution of McGaugh, and the alleged harassment of Dudley following her identification of McGaugh as her assailant. Attachment Complaint 1-5, ECF No. 1-1. But Plaintiff Dudley did not reference any prior incidents involving McGaugh, any prior incidents involving other individuals at FMC-Carswell, and did not assert any complaint about BOP's hiring, supervision, training, or retention of its employees in general or of McGaugh. *Id.* Like the inmates in the *Peteet* and *Ramirez* cases, Dudley only included facts relating to the assault itself (aside from post-assault facts regarding Warden Upton not germane here), and did not provide any other facts putting the government on notice of any other potential claims. Thus, as Dudley failed to mention or allude to any facts providing notice of her negligence claims, she failed to exhaust such claims and they should be dismissed for lack of jurisdiction.

### D. Negligent Retention/ Supervision Claims Alternatively Barred by Discretionary Function Exception to the FTCA Waiver of Immunity

The Court next considers, in the alternative, whether Dudley's claims of negligent retention and negligent supervision are barred by the discretionary function exception to the FTCA's waiver of immunity.

The FTCA expressly excludes from the waiver of sovereign immunity claims based "upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a) (West 2019). This "discretionary function" exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

The discretionary function exception is potentially applicable in this case because BOP officials generally exercise significant judgment in fulfilling their statutory obligation to provide for the safekeeping, care, and subsistence of all federal prisoners. *See* 18 U.S.C. § 4042(a) (setting out duties of the BOP); *Spotts v. United States* 613 F.3d 559, 567 (5th Cir. 2010) ("[T]he Federal Bureau of Prisons [must] provide for the safekeeping, care, and subsistence of all federal prisoners, but [Section 4042(a)]does not indicate the manner in which the duty must be fulfilled.").

The Supreme Court has developed a two part test for determining whether qualifies as a discretionary function such that the exception to the FTCA applies. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citing *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). The first question to ask is whether the act "involv[es] an element of judgment or choice." *Id.* at 322. (internal quotation marks and citation omitted). If so, we then ask "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (internal quotation marks and citation omitted). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Id. at 322 (quoting *Berkovitz*, 486 U.S. at 536). If the discretionary function exception applies, this court lacks subject matter jurisdiction. See *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc).

For the detailed reasons set forth in the USA reply to Dudley's response, the Court alternatively finds that Dudley's remaining claims of negligent retention and negligent supervision must also be dismissed as barred by the discretionary function exception to the FTCA's waiver of immunity. USA Reply 4-9. ECF No. 26. As explained therein, although Dudley relies upon the provisions and implementing standards of the PREA, she has not shown that any prison official's act or failure to act contravened a mandatory statutory or policy directive as required under the first factor of *Gaubert*.

Furthermore, as to the second factor, the PREA standards recited by Dudley actually grant prison officials broad discretion in investigating and disciplining actual or potential instances of sexual abuse. USA Reply 5-7, ECF No. 26. Furthermore, the supervision of correctional officers requires a large amount of decision making and balancing of competing objectives that courts have found are discretionary functions. *See Dorsey v. Relf*, No. 4:12-cv-021-A, 2013 WL 791604, at *5 (N.D. Tex. Mar. 4, 2013) ("Decisions regarding hiring, supervising, training, and retaining employees involve many public policy considerations and matters of judgment and choice for Bureau of Prisons employees making those decisions. Decision-making employees must evaluate and weigh the qualifications of applicants, consider staffing requirements, conduct ongoing assessment of training needs, and make numerous daily decisions regarding supervision of employees. These 'multi-factored choices require the balancing of competing objectives, and are of the 'nature and quality that Congress intended to shield from tort liability'") (citing *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995)(internal citation omitted)); *see also Dretar v. Smith*, 752 F.2d 1015, 1017 n. 2 (5th Cir. 1985) ("Supervising employees is certainly a discretionary function.").

For these reasons, the Court finds that Dudley's negligent retention and negligent supervision claims are alternatively barred from review by the discretionary function exception to the FTCA's waiver of immunity.

## V.    CONCLUSION AND ORDER

For all of the above and foregoing reasons,

It is **ORDERED** that the motion to dismiss of the USA (ECF No.15) is **GRANTED** such that all Plaintiff Dudley's claims against the United States are **DISMISSED** with prejudice for lack of subject matter jurisdiction.

It is further **ORDERED** that Defendant Jody Upton's motion to dismiss for failure to state

a claim under Federal Rule of Civil Procedure 12(b)(6)(ECF No. 16) is **GRANTED** such that all Plaintiff Dudley's claims against Jody Upton are **DISMISSED** with prejudice.

It is further **ORDERED** that Defendant Matthew McGaugh's request/motion to dismiss, construed as a motion under Federal Rule of Civil Procedure 12(b)(2) (ECF No. 25), is **DENIED**.

It is further **ORDERED** that the time for Defendant Matthew McGaugh to file a responsive pleading to Dudley's complaint is within **14 days from notice of this Order.**[5]

**SO ORDERED** on this **3rd day** of **February, 2020.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[5]The Clerk of Court is directed to send McGaugh's copy of this Opinion and Order and the accompanying Rule 54(b) Judgment to him via certified mail, return receipt requested.